# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

VIA CHRISTI REGIONAL              )
MEDICAL CENTER, INC. *et al.*,    )
                                  )
    Plaintiffs,          )
                                  )
v.                                )
                                  )
BLUE CROSS AND BLUE               )
SHIELD OF KANSAS, INC.,           )    Case No. 04-1253-WEB
                                  )    (Consolidated with
                                  )       Case No. 04-1339-WEB)
    Defendant/Third Party Plaintiff  )
                                  )
v.                                )
                                  )
INSURANCE MANAGEMENT              )
ASSOCIATES OF KANSAS, INC.        )
                                  )
    Third Party Defendant.      )
_____ )

## MEMORANDUM AND ORDER

Before the Court are Plaintiffs' Motion to File Amended Complaint and supporting Memorandum filed on January 24, 2006.  (Docs. 77,78.)  Plaintiffs seek leave to add a claim under §502(a)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(3).  Defendant filed a response on

February 16, 2006 (Doc. 86), and Plaintiffs filed their reply on March 1, 2006.[1]

(Doc. 88.)  After careful consideration of the submissions of the parties, and the

authority cited therein, the Court is prepared to Rule on Plaintiffs' motion.

## BACKGROUND

Plaintiffs' claims, Defendant's defenses, and the consolidation of the two

distinct cases are summarized in the "Nature of the Case" section of the District

Court's March 4, 2005, Order on Defendant's Motion to Dismiss.  (Doc. 25 at 1-2.)

That summary will not be repeated here, but is incorporated by reference.  The

Court will, however, include additional facts relevant to the pending issue.

The District Court's Order (Doc. 25) granted Defendant's Motion to Dismiss

(Doc. 14) in regard to the breach of fiduciary duty claims brought by Plaintiff,

Chance Industries, Inc. ("the Company") and Plaintiff, The Chance Industries, Inc.

Employee Benefit Plan ("the Plan"), and in regard to the promissory estoppel claim

brought by Plaintiff, Via Christi Regional Medical Center, Inc. ("the Hospital").

The District Court denied Defendant's motion in regard to the Hospital's breach of

fiduciary claim.  The District Court noted that Defendant did not include the breach

of fiduciary duty claim brought by Plaintiff Cecillia Arnold ("Arnold") in its

---

[1] Third Party Defendant Insurance Management Associates of Kansas, Inc. is not
involved in this motion.

2

motion to dismiss; therefore, no opinion was expressed as to the merits of that claim.

Thereafter, Defendant filed its Answer on March 14, 2005, denying that it "provid[ed] direct assistance or advice regarding modification of [the Plan] from self-funded to fully insured."  (Doc. 26, at ¶ 11.)  Defendant further denied that "the lapse of the Stop Loss Policy was based on its recommendation or advice." (Doc. 26, at ¶ 14.)  Defendant also denied that it breached a fiduciary duty to Plaintiffs.  (Doc. 26, at ¶¶ 20-25.)

On August 24, 2005, Defendant filed a third party complaint against Insurance Management Associates of Kansas, Inc. ("IMA"), claiming common law indemnification and contribution from IMA to the extent Defendant is found liable to Plaintiffs under the Employee Retirement Income Security Act of 1974, ("ERISA"), 29 U.S.C. § 1001, *et seq.*  (Doc. 55.)  Defendant also brought a claim against IMA for breach of fiduciary duty, "[t]o the extent this Court finds a fiduciary status was created and breached pursuant to ERISA . . ."  (Doc. 55, at ¶ 32.)  IMA filed its Answer on October 10, 2005.  (Doc. 60.)

Defendant filed its Motion for Summary Judgment (Doc. 63) and supporting Memorandum (Doc. 64) on December 9, 2005, moving for an order from the District Court dismissing the claims of Ms. Arnold and Via Christi because

> Via Christi was not assigned the right to pursue a breach
> of fiduciary duty claim under ERISA; Plaintiffs have not
> requested relief on behalf of the Plan as a whole; the Plan
> has not suffered a loss; the only damages asserted are
> compensatory and not equitable; and under the
> undisputed facts, [Defendant] did not breach a fiduciary
> duty under ERISA.

(Doc. 64, at 24.)  On January 19, 2006, the Court granted Plaintiffs a second

extension to respond to Defendant's Motion for Summary Judgment, allowing

them twenty days after the date of the filing of Defendant's supplemental summary

judgment memorandum.  (Doc. 70.)  Defendant filed its supplemental

memorandum on January 23, 2006, arguing that Arnold suffered no injury and,

therefore, Plaintiffs lack standing to pursue an ERISA claim.  (Doc. 74.)  Plaintiffs'

response to Defendant's summary judgment motion was filed on February 13,

2006.  (Doc. 83.)  That motion is currently pending.

During a January 19, 2006, telephone status conference, the Court vacated

the Scheduling Order in effect at the time (Doc. 59) pending a decision by the

District Court on dispositive motions then on file or to be filed soon thereafter.[2]

(Doc. 71, text entry.)  The vacated Scheduling Order, which had been entered on

---

[2] On January 20, 2006, IMA filed its Motion to Dismiss the third party claims
raised against it by Defendant BCBS.  (Docs. 72, 73.)  That motion also is currently
pending.

September 27, 2005, included a deadline of January 31, 2006, for motions for leave to amend the pleadings.  (Doc. 59, at 6.)

Plaintiffs filed the present Motion to File Amended Complaint and supporting Memorandum on January 24, 2006, seeking to add an additional claim under ERISA pursuant to Section 502(a)(3), 29 U.S.C. § 1132(a)(3).  (Docs. 77, 78.)

## DISCUSSION

### I.    Standards on Motions to Amend.

Fed. R. Civ. P. 15(a) provides that leave to amend "**shall be freely given** when justice so requires."  (Emphasis added.)  The Supreme Court has declared that this is a "mandate," which "is to be heeded."  ***Foman v. Davis***, 371 U.S. 178, 182, 83 S. Ct. 227, 230, 9 L. Ed. 2d 222 (1962).  Even so, the grant or denial of a motion for leave to amend is within the discretion of the Court.  *Id*.

"In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be 'freely given.'"  *Id*.; *see also* ***Frank v. U.S. West, Inc.***, 3 F.3d 1357, 1365 (10th Cir. 1993).  Of these reasons to deny a

motion to amend, Defendant argues that Plaintiffs' motion is untimely (Doc. 86 at 3 -5) and futile (*Id*. at 5 - 9). The Court shall consider both arguments in turn.

**II.     Timeliness**.

As stated above, the most recent Scheduling Order entered by the Court contained a January 31, 2006, deadline to file motions for leave to amend the pleadings. (Doc. 59.) Defendant contends that because this Scheduling Order was vacated by agreement of the parties pending a ruling on dispositive motions (Doc. 71), the order has "no effect" and Plaintiffs' reliance on it is "simply wrong." (Doc. 86 at 3-4.) According to Defendant, the Court should look to the initial Scheduling Order of April 27, 2005 (Doc. 28), which contains a July 29, 2005, deadline to amend the pleadings, "for guidance in determining whether Plaintiffs' Motion to Amend is timely." (Doc. 86 at 4.) Defendant further contends that Plaintiffs' motion is "grossly belated." (Doc. 86 at 3.) Simply stated, Defendant's argument is not persuasive.

Although Defendant is correct that no Scheduling Order is currently in effect, the most recent order contained a deadline of January 31, 2006, on motions for leave to amend the pleadings. (Doc. 59.) It would be nonsensical for the Court to ignore this order and turn to the order it superceded (Doc. 28) for "guidance" regarding the appropriate deadline. At the time the most recent order

6

was vacated, the deadline for motions for leave to amend had not expired.  The present motion was filed a week before that deadline would have passed.  Therefore, the Court can find no justification to deny Plaintiffs' motion as untimely.[3]

## III.   Futility.

A district court is justified in denying a motion to amend as futile if the proposed amendment could not withstand a motion to dismiss or otherwise fails to state a claim.  *Ketchum v. Cruz*, 961 F.2d 916, 920 (10th Cir. 1992).  A court may not grant dismissal, however, "'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  *GFF Corp. V. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)).  For purposes of this motion, the Court must accept as true all well-pleaded facts and view those facts in the light most favorable to Plaintiff.  *See Jefferson County Sch. Dist. No. R-1 v. Moody's Investor's Servs. Inc.*, 175 F.3d 848, 855 (10th Cir. 1999) (interpreting the standard for a motion to dismiss).  In

---

[3]  Defendant has not shown that it has suffered any prejudice from the timing of the motion to amend.  As Plaintiffs correctly point out, many of the delays in this case have been at the "sole request" of Defendant "or at the joint request of all the parties."  (Doc. 88 at 2.)

making this determination, however, it is *only* well-pleaded facts, as distinguished from conclusory allegations, that must be taken as true.  *See **Najim v. City of Wichita,*** 2005 WL 2043426 * 2 (D.Kan., Aug. 24, 2005) (citing ***Swanson v. Bixler,*** 750 F.2d 810, 813 (10th Cir. 1984); ***Lingenfelter v. Bd. of County Commissioners of Reno County,*** 359 F.Supp.2d 1163, 1165-66 (D.Kan. 2005)). *See also **Tonkovich v. Kansas Bd. of Regents,*** 159 F.3d 504, 510, 533 (10th Cir. 1998) (noting that the court does not need to accept conclusory allegations or inferences which are not reasonable).  Establishing futility of a proposed amendment is a difficult burden to meet.

The claim contained in Plaintiffs proposed Amended Complaint alleges Defendant breached its fiduciary duty to the Plan and its participants pursuant to §503(a)(3) of ERISA.  (Doc. 77, Exh. 1, ¶¶ 16-20.)  According to Plaintiffs, this breach occurred when Defendant "fail[ed] to advise the Company and the Plan of the pending claim by Via Christi arising for the care Via Christi provided to" Arnold's infant child.  (*Id*. at ¶18.)  Plaintiffs contend the Plan has suffered a loss of $459,935.74 "as a direct and proximate result" of Defendant's breach.  (*Id*. at ¶19.)  Plaintiffs further contend that Defendant "is in possession and control of the funds it would have been required to pay the Plan" had the Company not cancelled the Stop Loss Policy, and these funds "belong in good conscience to the Plan." *Id.*

at ¶ 20.)

In arguing the futility of this claim, Defendant contends that "Plaintiffs make clear that their claim [under §502(a)(3) of ERISA] seeks to impose personal liability on [Defendant] for an alleged breach of an alleged duty.  In short, Plaintiffs have not alleged a wrongful gain or action for which equitable restitution would provide a remedy."  (Doc. 86 at 7.)  According to Defendant, "Plaintiffs here have not attempted to target or to identify in the Amended Complaint specific funds held by BCBS, as would be necessary to maintain an equitable restitution claim."  (Doc. 86 at 9.)  Rather than seek funds wrongfully held by Defendant, "Plaintiffs contend BCBS is liable to them for money damages in the amount BCBS would have had to pay" had the Company not cancelled its Stop Loss Policy.  (*Id*.)  Therefore, according to Defendant, Plaintiffs' claim is merely a request for "money damages" – which is "the classic form" of legal, rather than equitable, relief.  (*Id*.)

Citing paragraph 20 of their proposed Amended Complaint, Plaintiffs reply that they *have* identified the specific funds held by Defendant for which they seek restitution: "BCBS is in possession and control of the funds it would have been required to pay the Plan had the Stop Loss Policy issued by BCBS not been cancelled based on the erroneous information provided by BCBS."  (Doc. 88 at 3.)

9

According to Plaintiffs, they "could not have identified the funds for which they are seeking restitution any more clearly."  (Doc. 88 at 4.)

The parties apparently agree that §502(a) allows claims that are equitable, rather than compensatory, in nature.  (*See* Doc. 86 at 6-9; Doc. 88 at 3-6.)  This is in accordance with the case law on the issue. *See generally Mertens v. Hewitt Assoc*., 508 U.S. 248, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993); *Milsap v. McDonnell Douglas Corp*., 368 F.3d 1246 (10th Cir. 2004).

Simply because an equity court had power to provide legal or compensatory relief does not necessarily mean that a plaintiff may obtain such relief under §502(a)(3).  In fact, the Supreme Court has specifically rejected such an argument. *See Mertens*, 508 U.S. at 256-58, 113 S.Ct. 2063; *Great-West Life & Annuity Ins. Co v. Knudson*, 534 U.S. 204, 210, 122 S.Ct. 708, 712, 151 L.Ed.2d 635 (2002). Thus, Plaintiffs' claim for damages must result from Defendant's gain, rather than Plaintiffs' loss.  *Mertens v. Hewitt Assoc*., 508 U.S. 248, 253, 261-62, 113 S.Ct. 2063, 2067, 2071, 124 L.Ed.2d 161 (1993) (holding that ERISA is not a "make-whole statute"); *Milsap*, 368 F.3d at 1254 (holding that "the remedial purpose of § 502(a) is not to make the aggrieved employee whole"); *Callery v. United States Life Ins. Co. in the City of New York*, 392 F.3d 401, 406 (10th Cir. 2004) (holding that "restitution recoveries are based upon a defendant's gain, not a plaintiff's

loss"); ***Michaelis v. Deluxe Financial Services, Inc.***, No. Civ. 05-2351, 2006 WL 27210, at *2 (D.Kan. Jan. 5, 2006) (holding that a plaintiff "generally cannot recover compensatory damages under Section 502(a)(3) because they are based on plaintiff's loss rather than defendant's gain").

As stated by the Supreme Court, however, "a plaintiff could seek restitution in equity . . . where money or property identified as belonging in good conscious to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." ***Great-West***, 534 U.S. at 213, 122 S.Ct. at 714; *see also* ***Callery***, 392 F.3d at 406.  Thus, Plaintiffs argue that they are not simply seeking recovery of their unpaid medical expenses.  Rather, they argue that Defendant breached its fiduciary duty to Plaintiffs, the funds sought are "still in [Defendant's] possession," and that such funds have been "identified with particularity" by Plaintiffs.  (Doc. 88 at 5.)

Even accepting as true all well-pleaded facts and viewing them in the light most favorable to Plaintiffs, Plaintiffs have failed to identify clearly traceable funds in Defendant's possession which the Court could "restore" to Plaintiffs.  ***Great-West***, 534 U.S. at 214.  "Restore" is defined as "to give back (as something lost or taken away)."  Webster's New International Dictionary 1936 (3d ed. 1986).  Based on the information before the Court, the funds in question were never in Plaintiffs'

11

possession; they were not "lost" by or "taken away" from Plaintiffs.  Rather, according to Plaintiffs, the funds at issue are those that Defendant **"would have been** required to pay the Plan" pursuant to the terms of the Stop Loss Policy had the policy not been cancelled.  (Doc. 77, Exh. 1 at ¶20) (emphasis added).  In the Court's view, Plaintiffs' allegations of the existence of a "fund" which should then allow equitable restitution is not a "well-pled fact" but rather is a conclusory allegation.  Therefore, the Court is not bound to accept this allegation as true for purposes of ruling on the present motion.  Even if that conclusory allegation were accepted, however, this still would not be legally sufficient to overcome the application of **Great-West**.  *See infra,* n. 4.

Here, as in **Callery**,[4] Plaintiffs are "not seeking to regain particular funds or property."  392 F.3d at 406.  Rather, in the opinion of the Court, Plaintiffs are "seek[ing] payment of the policy proceeds, [and] such relief is barred under

---

[4] Plaintiffs' allegations that Defendant has "gained" by virtue of the fact that it did not have to pay the $495,935.74 under the Stop Loss policy is very similar to the allegations in **Strom v. Goldman, Sachs & Co.,** 202 F.3d 138, 143 (2nd Cir. 1999).  In that case, plaintiff sought the amount of money she *"would have received* had [defendant's] alleged breach of fiduciary duty not resulted in her husband's group life insurance failing to become effective before his death."  (Emphasis added).  The Tenth Circuit in **Callery** distinguished **Strom**, noting that it was decided prior to the Supreme Court's rejection of a broad definition of the term "equitable remedy" in **Great-West.**  392 F.3d at 408.  Likewise, Plaintiffs' attempt in this case to define a "fund" by what it "would have received" if the Stop Loss policy had not been cancelled is foreclosed by the holding in **Great-West.**

12

§502(a)(3)." *Id*. at 405.  While the reasoning of the majority in **Great-West**

concerning what equitable relief is available under ERISA may seem overly

technical and strained, and in the view of the dissent "needlessly obscures the

meaning and complicates the application of § 502(a)(3)" 534 U.S. at 234, 122 S.Ct.

at 726 (5-4 decision) (Ginsburg, J., dissenting), this Court is bound by that

majority decision.  As such, the Court has no alternative but to DENY Plaintiffs'

Motion to Amend.

  **IT IS THEREFORE ORDERED** that Plaintiffs' Motion to File Amended

Complaint (Doc. 77) is DENIED.

  **IT IS SO ORDERED.**

Dated at Wichita, Kansas on this 28th day of March, 2006.

         s/ Donald W. Bostwick

       DONALD W. BOSTWICK
       United States Magistrate Judge